IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILLIAM WILEY,

    Plaintiff,

vs.                                                 CIVIL ACTION NO. 1:04CV176
                                                    (Magistrate Judge John S. Kaull)

UNITED STATES DEPARTMENT OF VETERANS'
AFFAIRS, R. JAMES NICHOLSON,[1]
Secretary of Veterans' Affairs,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, William Wiley ("Mr. Wiley") alleges that Defendant, United States Department of Veterans' Affairs, ("VA") in failing to hire him, discriminated against him on account of his race/ sex and/or age in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. ("Title VII") and the "ADEA" Age Discrimination in Employment Act (29 U.S.C. § 621, et seq(ADEA of 1967). The plaintiff seeks declaratory and equitable relief as well as damages. Defendant has moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c). This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. The case is before the undersigned Magistrate Judge by consent of the parties and Order of Reference by Chief United States District

---

[1]R. James Nicholson has replaced Anthony J. Principi as Secretary of Veterans Affairs, and is automatically substituted as Defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1).

Judge Irene M. Keeley pursuant to 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73.

For the reasons which follow, the Court will grant Defendant's motion.

## I. UNDISPUTED MATERIAL FACTS

The Court finds the following facts to be undisputed and material.

Plaintiff William Wiley ("Mr. Wiley") is an African-American male over the age of 40. He earned a B.S. degree in Journalism from West Virginia University ("WVU"), graduating magna cum laude in 1980. Mr. Wiley subsequently earned a Masters Degree in Industrial Relations (Personnel Administration) from WVU, with honors. (Plaintiff's Trial Ex. 1D). Mr. Wiley has employment experience as a Human Resources representative at WVU from June 1988 through November 1996; a Human Resources representative at Sears from September 2000 through June 2001; and a Human Resources Manager at HCR Manor Care from June 2001 through October 2001. (Id. at 1B and 1C).

On or about December 20, 2001, Defendant announced a position opening for a Human Resources Specialist at the Louis A. Johnson VA Medical Center in Clarksburg, West Virginia. (Defendant's Ex. 2). The position was announced in two ways: 1) "Merit Promotion Announcement" ("MPP"), the internal or "Federal" Announcement, and 2) "DEU Announcement" ("DEU"), the external announcement which is open to all United States citizens. (Defendant's Trial Exhibit 2- Declaration of Cheryl Welch).

The MPP announcement stated:

> This announcement is a solicitation for applications from current VA employees for competitive promotion consideration. It does not, however, restrict the right to consider or select applicants from any other recruitment source such as reassignment, appointment, demotion, transfer, reinstatement, or special appointing authorities

2

such as those for disabled veterans, veteran readjustment appointment (VRA) eligibles, severely handicapped individuals, etc.

Fliers were also sent to various Colleges in an effort to generate applications from recent college graduates who would be eligible to apply based on the Outstanding Scholar Program. Outstanding Scholars could also apply for MPP announcements based on their eligibility for a special hiring authority as described in the MPP statement. Other individuals who could apply for the MPP announcements, as stated above, included but were not limited to veterans, 10-point veterans, and transferees and reassignees from other federal employment agencies. Id.

Under the DEU announcement all candidates were considered "external" and were to be evaluated based on the same criteria, with the exception of individuals entitled to Veterans Preference. Id. Mr. Wiley responded to the DEU announcement. It specifically announced a GS-09 position with a target of GS-11. It stated, in pertinent part:

> NOTE #3: Applicants applying under this announcement WILL NOT be considered under Veterans Readjustment Authority (VRA), Reinstatement, Transfer, Schedule A, or other direct hiring authorities. If you wish to be considered under one of these appointment authorities, please contact the Human Resources Office in the facility where you wish to be employed.
>  . . . .
> NOTE #5: Applicants interested in being considered for more than one grade level **must submit a complete application package for each grade level for which they wish to be considered**. If you submit only one application package, it must indicate a grade level. Applications received without a grade level indicated will be evaluated for all grades and will be referred at the highest eligible grade level only.
>  . . . .
> YOUR APPLICATION MUST INCLUDE THE FOLLOWING INFORMATION: ANNOUNCEMENT NUMBER, OCCUPATIONAL TITLE, LOCATION OF THE POSITION **AND THE GRADE LEVEL FOR WHICH YOU ARE APPLYING .** . . .

. . . .
> PLEASE NOTE: **APPLICANTS MUST SUBMIT A SEPARATE APPLICATION PACKAGE FOR EACH VACANCY ANNOUNCEMENT**.

(Defendant's Trial Ex. C2)(emphasis added by the Court)..

Defendant applied only pursuant to the DEU announcement and specifically stated on his application that he was applying for the job titled Human Resources Specialist at GS 09/11. (Defendant's Tr. Ex. C7). He did not submit any other application under any other announcement and did not apply at any other GS level. (Declaration of Cheryl Welch, Defendant's Tr. Ex. 2). Mr. Wiley also submitted his college undergraduate and graduate transcripts showing he graduated *magna cum laude* (*i.e.*, with a G.P.A. at or above 3.50) as well as his resume and references. Although his "Optional Application for Federal Employment" contained only his previous two jobs, totaling only four months of Human Resources experience, his resume indicated he actually had approximately nine years of Human Resources experience. (Defendant's Tr. Ex. C7).

Also applying pursuant to the DEU announcement for the GS-9 position were William H. Nichols, a "CPS" veteran, and Mary C. Williams, like Wiley, a non-veteran. (Defendant's Tr. Ex. C5).

A number of individuals applied under the MPP announcement. All applicants under both announcements were reviewed for qualifications and eligibility for the position. Numerous Selection Certificates were prepared (one generated for each type of application), including, under the MPP announcement, certificates for "Internal Applicants," "Outstanding Scholars," "VEOA," "Change to Lower Grade," "10 point Veterans Preference," and "Transfer Eligible," as well as the DEU certificate.

Chauna Bucklew, a veteran, was considered as a VEOA (Veterans Employment

Opportunities Act) applicant pursuant to the MPP announcement. (Plaintiff's Tr. Ex. 4).[2] She was referred solely for a GS-5 level position, however. Saundra Huggins, who applied under the MPP as a "Transfer From Another Federal Agency", was referred at the GS-9 level, as was Mr. Wiley and William Nichols. (Id.)

After the OPM referred the eligible applicants under each certificate, Chief Human Resources Manager Barbara Rogers decided to interview all 20 preliminarily qualified applicants. She utilized a "Scorecard" which contained, for each candidate, a rating based on "experience/education" plus interview score, "considerations" such as any preferences, education, and experience, and a ranking. (Id.). She used a separate "scorecard" to subjectively score the interviews. She asked every applicant the same series of questions, and then gave a score for each answer. (Defendant's Tr. Ex. B2). The interview included questions regarding the applicants' writing skills, fact-finding skills, computer skills, analytical skills, coping skills, communications skills, and abilities to work with a wide variety of people and situations and to handle multiple responsibilities. (Defendant's Tr. Ex. C3). The Court notes that not one of the questions is racially, gender or age-biased on its face, and Mr. Wiley testified Ms. Rogers did not make any comments in regard to race, sex or age during the interview. (Defendant's Tr. Ex. at B1).

During Mr. Wiley's interview, Ms. Rogers informed him that there were actually two positions available, and that if he qualified for both, the interview would be considered for both. Following the interview, Mr. Wiley asked Ms. Rogers if he could take a tour of the Human

---

[2]Although the record indicates Ms. Bucklew was considered as an "Outstanding Scholar" candidate, this was subsequently changed to "VEOA." It is unknown whether the original classification was a mistake on Ms. Bucklew's part or the Office of Personnel Management ("OPM"). She was legitimately considered as a VEOA applicant, however.

Resources office and meet the staff. Ms. Rogers gave Mr. Wiley a tour of the office. Mr. Wiley later testified he "saw no people of color" within the office. He did see one male, and could not determine any of the staffers' ages. (Defendant's Tr. Ex. B1). There are seven staff members.

Ms. Rogers gave Ms. Huggins an interview score of 72, Ms. Bucklew a 69, Mr. Nichols a 52, and Mr. Wiley a 62. (Plaintiff's Tr. Ex. 4). The other 16 applicants received scores between 30 and 83 for the interview. Mr. Wiley's interview score was the seventh highest out of the 20 candidates.

Mr. Wiley scored a 10, apparently the highest score possible, for his experience/education (Id.). Three other candidates scored a perfect 10. Ms. Huggins scored a 7, Ms. Bucklew a 7, and Mr. Nichols a 4 for experience/education.

Ms. Rogers first chose the two applicants who had the highest combined scores. Both had applied only under the "Outstanding Scholars Program," however, and both were subsequently determined to be ineligible due to their not having the required 3.5 G.P.A. They were both therefore totally disqualified, despite their perfect scores for education/experience, and their interview scores of 82 and 83 respectively. They were apparently not considered under any other certificate, but only under the one for which they had originally applied. Neither party provided information, and the Court does not know, whether either or both of these two applicants were African American or Hispanic.[3]

---

[3]

The Outstanding Scholars Program came about as a result of the Luevano Consent Decree. See Luevano, et al., v. Campbell, Director, OPM, et al. The consent decree resolved a class-action suit alleging that the PACE Exam, which the government used to fill occupations at the GS-5 and GS-7 levels, had an adverse impact on the selection of African Americans and Hispanics. (Plaintiff's Tr. Ex. 5A). Pursuant to the consent decree the Outstanding Scholars Program was to be used "to fill jobs at only the [entry-level] GS-5 and GS-7 grade levels." Id.

After Ms. Rogers' two first choices were disqualified, the next two highest- scoring applicants were Ms. Huggins and Ms. Bucklew, the eventual successful selectees (Plaintiff's Tr. Ex. 4).[4] Mr. Wiley was ranked fourth out of the remaining 17 candidates. Ms. Huggins was first on the MPP "Transfer Eligible" certificate with a total score of 72, and Ms. Bucklew was first on the "VEOA" certificate with a total score of 76. Mr. Wiley had the highest score on the "DEU" CS-9 certificate, with a 72. Mr. Nichols had a 56 on the same certificate. Neither Mr. Wiley nor Mr. Nichols were selected for the GS-9 position.

Ms. Bucklew had no HR experience. She had a BS in Psychology. Ms. Huggins had no college degree, only vocational/technical school training and training pursuant to her job. She had 11 years of experience in the Federal government personnel field and was currently a Human Resources Assistant at NIOSH. She received very high ratings from her supervisors.

Mr. Wiley filed charges with the Equal Opportunity Employment Commission ("EEOC"), alleging that Defendant, through the interview and selection process for the positions, discriminated against him on account of his race, sex, and/or age. After investigating the charge, the EEOC determined that Mr. Wiley had established a *prima facie* case regarding his non-selection to the GS-9 position as a member of three protected classes: African American, male, and over the age of 40. (Defendant's Tr. Ex. 3). EEOC determined, however, that Mr. Wiley did not establish a *prima facie* case as to the GS-5 position, because he did not apply at the GS-5 level or through the Outstanding Scholars Program.[5] The Administrative Judge ("AJ") concluded that the evidence did not support

---

[4]There was a candidate with a score in between these two, but she was referred only for a GS-11 position, and was therefore ineligible for the positions available.

[5]The undersigned notes that the Administrative Judge found Ms. Bucklew "was selected from the outstanding scholar program." As already discussed, however, Ms. Bucklew was

a finding that the VA discriminated against Mr. Wiley. The Office of Employment Discrimination affirmed the AJ's decision and informed Mr. Wiley of his right to file a civil action in the United States District Court on May 12, 2004 (Defendant's Tr. Ex. 4).

Mr. Wiley filed the within civil action on August 9, 2004. Defendant moved for summary judgment on October 3, 2005.

## II. DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. F.R.Civ.P. 56. Summary judgment is appropriate where parties do not dispute material facts that might affect the outcome of an action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under Rule 56, the movant bears the burden of proving the absence of any genuine issues of material fact, and the Court must view the facts and any justifiable and legitimate inferences drawn therefrom in the light most favorable to the non-moving party. Id. at 248, 255-56, 106 S.Ct. at 2510, 2513-14. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). Where no genuine issue of material fact exists, the Fourth Circuit has imposed an obligation on the trial judge "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-

---

actually selected pursuant to the VEOA, not the outstanding scholars program.

Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987).

Once the movant has met this burden, and a properly supported motion is before the Court, a non-moving party, who will bear the burden of proof at trial on a dispositive issue, may not rest upon mere belief or conjecture, or the allegations and denials contained in his pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). Rather, the non-moving party must set forth specific facts with affidavits, depositions, interrogatories or other evidence to show a genuine issue for trial. Id.

Courts must take special care in considering summary judgment in cases involving questions of motive, such as in employment discrimination cases. Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1004 (4th Cir.), cert. denied, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364-65 (4th Cir.1985). However, " '[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is never an appropriate vehicle for resolution.' " Ballinger, 815 F.2d at 1005 (quoting International Woodworkers of America v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1272 (4th Cir.1981)) (emphasis in original). If the dispute is not material or is not genuine, summary judgment is appropriate.

For evaluation of employment discrimination claims, the Fourth Circuit has adopted the three-part burden of proof test initially set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981). See e.g., Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Wheeler v. Travelers Companies, 866 F.Supp. 268, 270 (E.D.Va.1994). First, the plaintiff

9

must establish a *prima facie* case. If he establishes a prima facie case, the burden of proof shifts to the defendant to present legitimate, non-discriminatory reasons for not hiring him. If the defendant does so, the burden of proof shifts back to Plaintiff to show the reasons expressed by the defendant were pretextual.

### A. *Prima facie* case

First, the plaintiff must establish a *prima facie* case that: 1) he is a member of a protected group; 2) he applied for the position in question; 3) he was qualified for the job; and 4) he was rejected in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. Alvarado v. Bd. of Trustees of Montgomery College, 928 F.2d 118, 121 (4th Cir.1991); see also McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1093-94. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." Burdine, 450 U.S. at 254, 101 S.Ct. at 1094.

Mr. Wiley meets the first element of the test, for a claim based on race, sex, and/or age discrimination. He is an African-American male over the age of 40. As the AJ found, however, he does not meet the second, third, or fourth elements as regards the GS-5 level job given to Ms. Bucklew.

With regard to the second element of the test, Mr. Wiley did not apply for the position. He only and specifically applied for the GS-9 position. The announcement for that position twice expressly stated that "Applicants interested in being considered for more than one grade level must submit a complete application package for each grade level for which they wish to be considered." Further: "If you submit only one application package, it must indicate a grade level. Applications

received without a grade level indicated will be evaluated for all grades and will be referred at the highest eligible grade level only." Defendant's application was for the GS-9/11 level only. He therefore did not "apply for the position in question," and was therefore "not qualified for the job."

Mr. Wiley's argument that he should have been considered an "Outstanding Scholar" as a means of meeting his burden of proof is without merit. It does appear he meets all the requirements to be considered an "Outstanding Scholar." He did not, however, apply to the MPP announcement as an "Outstanding Scholar." Nor did he "contact the Human Resources Office in the facility where [he] wish[ed] to be employed" in order to be considered under the "Outstanding Scholars" program, as was required by the DEU announcement. The Court therefore finds Mr. Wiley did not meet his burden of proof as to the GS-5 position awarded to Ms. Bucklew. Simply stated, Mr. Wiley failed to properly apply for the GS-5 position.

The Court does find that Mr. Wiley met his burden of establishing a *prima facie* case as regards the GS-9 position that was eventually awarded to Ms. Huggins. He did apply for the job, was determined to be qualified for the job, and was rejected in favor of a younger white woman.

### B. Rebutting the Presumption

Because Mr. Wiley has established a *prima facie* case as to the GS-9 position, the burden shifts and falls upon Defendant to rebut this presumption by producing evidence that Mr. Wiley was not hired for a legitimate, nondiscriminatory reason**.** Id. If Defendant satisfies this burden of production, he has rebutted the presumption raised by the plaintiff's *prima facie* case. Id. at 255, 101 S.Ct. at 1094-95.

Defendant asserts several reasons for Mr. Wiley's not having been hired. First, Defendant asserts Mr. Wiley was not hired because he was not as qualified for the job as was

candidate Huggins. The record before the Court confirms that Defendant legitimately reached this conclusion. To begin, a comparison of Mr. Wiley's and Ms. Huggins' interview worksheets completed by Ms. Rogers indicates on its face a nondiscriminatory procedure employed in filling the position. Specifically, Ms. Huggins received an 8 (on a scale of 1-10) on Question 1: How do you rate your writing skills? Give a specific example of 3 types of documents you write routinely. What feedback do you get from your supervisor on your writing skills? Mr. Wiley received a 7 on the same question. Ms. Huggins and Mr. Wiley both received 7's for the next three questions regarding fact-finding skills, going above and beyond the call of duty, and handling multiple responsibilities. Ms. Huggins received an 8 on the next question which asked about "a time when you had more to do than you had time to get done," whereas Mr. Wiley received a 5 on that question. Both received 7's on the next question regarding "the most difficult information you have had to analyze before writing a report." Ms. Huggins received a 5 and Mr. Wiley only a 3 regarding competency with computer programs. Mr. Wiley indicated he was computer literate but was still learning, had only some experience with Excel, and was "just learning" PowerPoint, whereas Ms. Huggins stated she had trained on and used the programs regularly, with the exception of Power Point, for which she had taken courses, but did not use regularly. Both received 7's on question 9, concerning coping skills. Ms. Huggins received an 8 and Mr. Wiley a 7 on a question asking the candidates to provide examples to convince the interviewer he/she could work with a wide variety of people, situations, and environments. None of the questions indicate any discriminatory purpose, and Mr. Wiley testified Ms. Rogers did not ask any questions or make any comments that were discriminatory.

      Defendant also asserts that Ms. Huggins had "extensive" Human Resources experience,

whereas Mr. Wiley had only four months. This is a mistake of fact, the origin of which is unclear to the Court. Mr. Wiley's "Optional Application for Federal Employment" indicates only four months experience. His resume, however, indicates he actually had at least nine years experience. On the other hand, Ms. Huggins did have over 11 years experience, most of which was in Federal employment. Ms. Rogers testified the fact that Ms. Huggins had experience in "government HR" was significant. In short, Ms. Rogers determined that Mr. Wiley's overall presentation and application package was subordinate to those of Ms. Huggins, despite the fact he scored a 10 for education/experience, while she scored only a 7. This disparity was clearly based on the fact that Mr. Wiley had a college degree while Ms. Huggins had only taken vo/tech classes and courses pursuant to her job.

On this record, the Court concludes that Defendant's decision that Ms. Huggins was the more qualified applicant was fully justified and non-discriminatory. Selection of a more highly qualified applicant is a non-discriminatory reason for rejecting another applicant. Love v. Alamance County School Bd., 757 F.2d 1504, 1507 (4th Cir.1985). Thus, Defendant's stated reasons for not hiring Mr. Wiley are nondiscriminatory and Defendant has therefore rebutted any inference of discrimination.

### **C. Pretext**

Because the burden of persuasion remains on Mr. Wiley, the ultimate burden then falls on him to demonstrate that the reason set forth by Defendant "was not the true reason for the employment decision . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." Id. at 256, 101 S.Ct. at 1095. In summary, Mr. Wiley must show Defendant's non-discriminatory reason for not hiring him was pretextual. The employer's proffered

reason is not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis added). If the plaintiff fails to evidence a genuine dispute of fact over the employer's nondiscriminatory reason, he has not satisfied his burden and the defendant may prevail as a matter of law. Mitchell v. Data General Corp., 12 F.3d 1310, 1317 (4th Cir.1993).

Mr. Wiley has not persuaded the Court directly that "a discriminatory reason more likely motivated" Defendant. In fact, he testified during his deposition that Ms. Rogers asked no questions and made no comments that were discriminatory in nature. He does not offer any evidence that she or anyone else in the Human Resources Department or the VA did or said anything of a discriminatory nature. He did note that Ms. Rogers was a white female, all the other HR staff were white, and only one was male.

Plaintiff does argue, however, that several of Defendant's reasons for not hiring him were false and therefore pretextual. He first asserts:

> Ms. Rogers attributed an interview score to Mr. Wiley – an individual who completed undergraduate school, magna cum laude and received honors in connection with his post graduate degree – of only 62.00. In direct contrast, Ms. Rogers gave Ms. Huggins, an individual whose education ended with a Voc-Tech certificate, a subjective interview score of 72 – 10 points higher than Mr. Wiley received. Ms. Rogers also scored Chauna Bucklew significantly higher than Mr. Wiley on the subjective interview score. Chauna Bucklew received an interview score of 69.00 from Ms. Rogers. The only comparator who received a lower interview score than Mr. Wiley was William Nichols, the comparator who received an objective "education/degree" score of 4.

(Plaintiff's Response Memorandum at 4). The interview score was admittedly subjective. The Court notes, however, that Mr. Wiley was actually ranked 4th out of 17 eligible candidates. His interview score was the 7th highest of 20. Further, although Ms. Bucklew's education/experience

14

rating was lower than Mr. Wiley's, she did have a B.S. in psychology.

The Court certainly cannot find that the use of a subjective interview is in itself discriminatory. Most employers utilize personal interviews, and they are often the determinative factor in a hiring decision. During an interview an applicant's demeanor and personality can be evaluated in light of the position sought to be filled. An applicant's "perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant." Smith v. Flax, 618 F.2d 1062 (4th Cir.1980). Nor were the questions used in the interview discriminatory. Nor did Mr. Wiley assert that any comments or actions by any person in the Human Resources Department or the VA were discriminatory. On this basis the Court concludes that Mr. Wiley has failed to satisfy his burden of persuasion as a matter of law.

Mr. Wiley next argues three of Defendant's reasons for hiring Ms. Huggins and Ms. Bucklew over him were pretextual: First, that Saundra Huggins "had vast experience in the area of Human Resources;" second, that William Nichols, a disabled veteran, "blocked" him; and third, that Ms. Bucklew received a preference pursuant to the Veterans Employment Opportunity Act. (Plaintiff's Response Memorandum at 6).

Mr. Wiley argues that, contrary to Ms. Rogers' assessment of Ms. Huggins' "vast experience," the scorecard actually indicates she received only a 7 in the "experience/degree" score, whereas Mr. Wiley received a 10. This is true, but is not dispositive of the question. Mr. Wiley received the highest score possible for his combined education and experience, and Ms. Huggins' score in that regard was lower. This does not mean that Ms. Huggins did not have "vast experience," however. She did lack a college degree, whereas Mr. Wiley had an M.S. The score was for combined education and experience. The record shows her experience was at least

15

comparable to Mr. Wiley's, and, as Ms. Rogers' testified, was largely attained in working in Federal agencies, a fact that Ms. Rogers considered significant.

Second, Mr. Wiley asserts that Mr. Nichols could not have "blocked" him on the DEU GS-9 certificate because 1) "he could not rely on the Veterans Readjustment Authority," and 2) "the 10 point veterans preference is the only veteran advantage provided for [in] the competitive position for which both he and [Mr. Wiley] applied." (Plaintiff's Response memorandum at 7). Mr. Wiley is correct in asserting that Mr. Nichols could not utilize the VRA in applying under the DEU certificate. The VRA ("Veterans Readjustment Appointment") allows an agency to hire an eligible veteran without competition. 5 CFR § 307.101. Because the DEU, under which both Mr. Wiley and Mr. Nichols applied, is a competitive process the VRA does not apply.

Mr. Wiley is mistaken, however, in asserting that Mr. Nichols was allowed only his 10-point Veterans' preference. 5 CFR § 332.401(b) provides that "preference eligibles," such as Mr. Nichols, who have a compensable service-connected disability of 10 percent or more shall be entered at the top of the register. According to the record, Mr. Nichols has a 30% compensable service-connected disability. He was therefore legitimately (in fact, mandatorily) placed at the top of the certificate under which he and Mr. Wiley were eligible. Ms. Rogers testified she could not pass over Mr. Nichols in order to "reach" Mr. Wiley. In fact, there is a regulatory scheme by which such a preferable can be passed over, but only if the appointing officer (Rogers) files an objection to the eligible (Nichols) and that objection is sustained by OPM; however, the regulations indicate that the objection must be to the eligible's "certification," and only if the reasons are "disqualifying." 5 CFR § 332.406. Mr. Wiley does not argue and there is no evidence in the record that Mr. Nichols was, or should have been, "disqualified" from the position.

16

The Court therefore finds Ms. Rogers' and Defendant's assertion that Mr. Nichols "blocked" Mr. Wiley is not only non-pretextual, but is also dispositive. Ms. Rogers could not have passed over Mr. Nichols to hire Mr. Wiley.

Finally, despite finding Ms. Rogers could not have hired Mr. Wiley for the GS-9 position, the Court will address the merits of Mr. Wiley's final assertions – that Ms. Bucklew's status as a veteran could not have adversely impacted upon his selection, and that Ms. Bucklew was not qualified for the Outstanding Scholar program. Significantly, Ms. Bucklew was referred for and hired for a GS-5 level position.[6] As already discussed Mr. Wiley did not apply for a GS-5 position, but expressly applied only for a GS-9/11 position. He was therefore not qualified for the GS-5 position awarded to Ms. Bucklew. As has also already been discussed, Ms. Bucklew was actually hired as a VEOA eligible, not as an Outstanding Scholar. In addition, Ms. Rogers testified that Ms. Bucklew was a top student in her class in college, and, based on the interview, was "very highly motivated." The Court does not find the fact that she may have been referred to mistakenly as an outstanding scholar instead of a veteran indicates that the reasons for hiring her (or for not hiring Mr. Wiley) were pretextual.

For all the above reasons the Court finds Mr. Wiley has not met his ultimate burden of proving that Defendant's stated reasons for not hiring him were pretextual. In addition, the Court finds the fact that Mr. Nichols effectively "blocked" Mr. Wiley from the GS-9 position is dispositive. The Court concludes there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

---

[6]The Court notes this position was later changed to a GS-7. This, however, does not alter the fact that Mr. Wiley could not have been awarded this position.

### III. Conclusion

Because Defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to all of the claims in this case, the motion for summary judgment of United States Department of Veteran Affairs, R. James Nicholson, Secretary of Veteran Affairs is hereby GRANTED pursuant to Rule 56(e). This civil action is hereby DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: November 4, 2005.

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE